IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LUCAS CRANOR, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) Case No. _____ |
| | ) |
| v. | ) |
| | ) **CLASS ACTION** |
| SKYLINE METRICS, LLC d/b/a ONCEDRIVEN, | )<br>) |
| | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

1.  Plaintiff, Lucas Cranor, individually and on behalf of all others similarly situated, brings this action against Defendant, Skyline Metrics, LLC d/b/a OnceDriven ("Defendant") for negligently, willfully and/or knowingly making advertising and telemarketing "robo-calls" to Plaintiff's cellular telephone number without prior express consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

2.  "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015, 6:00 AM), https://www.consumerreports.org/cro/magazine/2015/07/rage-against-robocalls/index.htm. "Robocalls" are the #1 consumer complaint in America today and the Defendant's conduct in this case is a good reason why.

3.  The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy and to prevent illegal robocalls.

4.  In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices – for example, computerized calls

1

to private homes. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012) ("The Act bans certain practices invasive of privacy[.]").

5. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). "Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014).

6. According to findings by the Federal Communication Commission ("FCC")—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. These types of damages are the same shared by the Plaintiff and the class members.

7. Accordingly, the TCPA regulates, *inter alia*, the use of prerecorded messages and use of automated telephone equipment or "robodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded or artificial voice messages to make any call to a wireless number in the absence of an emergency or the prior express consent of the

called party.

8. In 2012, pursuant to its rulemaking authority under the TCPA, the FCC imposed even stricter requirements on "advertising" and "telemarketing" calls by making it unlawful to:

> Initiate, or cause to be initiated, any telephone call that includes or introduced an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any [cellular telephone number], other than a call made with the prior express written consent of the called party[.]

47 C.F.R. § 64.1200(a)(2). This prior written consent requirement became effective on October 16, 2013.

9. The term "prior express written consent" means:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200(f)(8). In other words, the agreement "must tell consumers the telemarketing will be done with autodialer equipment and that consent is not a condition of purchase." In re Rules & Regulations Implementing the TCP Act of 1991 et al., 30 FCC Rcd 7961, 8012-8013 ¶ 98 (F.C.C. July 10, 2015).

## JURISDICTION AND VENUE

10. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331 and 28 U.S.C. § 1391, respectively.

11. Defendant's unlawful conduct was directed to this District, Plaintiff's cellular telephone received the illegal calls in this District, Plaintiff resides in this District, and Defendant provides and markets its services in this District.

## FACTUAL ALLEGATIONS

12. Plaintiff is a natural person and citizen of the State of Missouri who resides in Joplin, Missouri, and is a "person" as defined by 47 U.S.C. § 153(39).

13. Plaintiff is the subscriber and regular user of the cellular telephone number at issue, (417) xxx-1968.

14. Thus, Plaintiff is the "called party" within the meaning of the TCPA.

15. Defendant Skyline Metrics, LLC ("Skyline") is a Virginia limited liability company with its principal place of business in Roanoke, Virginia, and is a "person" as defined by 47 U.S.C. § 153(39).

16. Skyline conducts business under the fictitious name "OnceDriven," which Skyline has registered with the State of Virginia.

17. On or about May 9, 2018, Plaintiff listed his vehicle for sale on Cars.com. The Cars.com terms and conditions provide, *inter alia*, "**Prohibited Activities** The following is a partial list of the kinds of activities that are prohibited on or through the Site: . . . (j) engaging in commercial activities and/or sales without prior written consent, such as contests sweepstakes, barter, advertising and pyramid schemes; . . . (l) using any robot, spider or other automated device, or a manual process, to monitor or copy web pages or the Content contained in the Site or for any other unauthorized purpose without the prior expressed written permission[.]"

18. The Cars.com listing for Plaintiff's car included Plaintiff's cellular telephone number.

4

19. On or about May 11, 2018, Plaintiff listed his vehicle for sale on Craigslist.org. Plaintiff's telephone number was not provided in this listing. In the listing, Plaintiff made clear that he did not want and was not authorizing any telemarketing or advertising calls, stating "DO NOT CONTACT ME WITH UNSOLICITED SERVICES OR OFFERS."

20. Upon information and belief, Defendant uses a commonly-available form of Lead Generating software colloquially referred to as a "scraper" to scour advertisements and listings on websites such as Cars.com and Craigslist.org, "scrape" or copy cellular telephone numbers from those ads, and call them in an effort to generate business.

21. Upon information and belief, Defendant used Lead Generating software to "scrape" or copy Plaintiff's cellular telephone number from the listings for the purpose of calling that number as alleged herein—in complete disregard of the Cars.com Terms of Service and Plaintiff's instructions in his listing.

22. Defendant never had prior express consent to place any calls to Plaintiff's cellular telephone number.

23. On May 10, 2018, Defendant placed a call to Plaintiff's cellular telephone number advertising the vehicle sales assistance services of Defendant. Defendant left the following artificial or prerecorded voice message in Plaintiff's voicemail:

> Hi. My name is Peyton, and my phone number is (888) 941-6515. Uh, we've got some clients who are shopping for vehicles, and I'm going through a list of vehicles like yours. I'd like to find out more about it, and um, tell you a little bit more about what we can do to help you get it sold. Uh, there's a small fee for the/this service. It's well worth it. I'll tell you about it when you call. And we do guarantee the results. So, call me back. I'd love to talk to you before the end of the day. Uh, the number is (888) 941-6515. Have a great day.

5

24. On May 15, 2018, Defendant placed another call to Plaintiff's cellular telephone number advertising the vehicle sales assistance services of Defendant. Defendant left the following artificial or prerecorded voice message in Plaintiff's voicemail:

> Hi it's Peyton calling again, and I hate to bother you, but I think we can help you get your vehicle sold. Uh, give me a call when you can. My number here is (540) 904-4838. Uh, it's not gonna [sic] cost you much, and we do guarantee the results. I really look forward to talking to you again it's (540) 904-4838. Have a great day.

25. On May 21, 2018, Defendant placed yet another call to Plaintiff's cellular telephone number advertising the vehicle sales assistance services of Defendant. Defendant left the following artificial or prerecorded voice message in Plaintiff's voicemail: "Hi this is Peyton calling. Please call me back at (540) 904-4838. Thanks."

26. Defendant thereafter called Plaintiff's cellular telephone number at least once more attempting to advertise the vehicle sales assistance services of Defendant.

27. On May 24, 2018, Plaintiff called the number that Defendant's May 10, 2018 voicemail asked him to call. An artificial voice answered "Thank you for calling OnceDriven. Your call may be recorded for quality control." Plaintiff navigated the automated menu in order to reach a live agent, was repeatedly placed on hold, and waited on hold for over ten (10) minutes attempting to be connected to Peyton or a manager. Ultimately, Defendant's agent Kelly answered and Plaintiff asked her to add his number to Defendant's no call list. Defendant's agent confirmed Plaintiff's cellular telephone number and that Plaintiff's number would be added to Defendant's no call list.

28. The Defendant's recordings did not provide any opt-out mechanism for Plaintiff to make a do-not-call request.

6

29. Each call Defendant made to Plaintiff's cellular telephone number was made without the prior express written consent of Plaintiff.

30. Defendant made at least one call to (417) xxx-1968 using an artificial or prerecorded voice.

31. Numerous calls Defendant made to (417) xxx-1968 in the last four years were made using an artificial or prerecorded voice.

32. By effectuating these unlawful phone calls, Defendant caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

33. Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, and intruded upon Plaintiff's seclusion.

34. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd 559 ¶ 7 (Jan. 4, 2008). Defendant's phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

35. Defendant has a corporate policy of making calls using an artificial or prerecorded voice to market and/or advertise its services to individuals such as Plaintiff for its financial benefit

36. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff and members of the Class and each Subclass.

## COUNT I: Violation of the TCPA

37. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 36.

38. Defendant made calls to Plaintiff's cellular telephone number using an artificial or prerecorded voice without Plaintiff's prior express consent.

39. The subject calls were not placed for emergency purposes within the meaning of 47 U.S.C. § 227(b)(1)(A).

40. Defendant willfully and knowingly violated the TCPA, including 47 U.S.C. § 227(b)(1)(A)(iii), each time it made a call to Plaintiff's cellular telephone number using an artificial or prerecorded voice without Plaintiff's prior express consent.

41. The subject calls and messages to Plaintiff's cellular telephone number advertised the commercial availability of Defendant's services, and therefore "included or introduced an advertisement" within the meaning of the TCPA.

42. The subject calls and messages to Plaintiff's cellular telephone number were for the purpose of encouraging the purchase or rental of, or investment in, Defendant's services, and therefore constitute "telemarketing" within the meaning of the TCPA.

43. Defendant did not have Plaintiff's "prior express written consent," as defined by 47 C.F.R. § 64.1200(f)(8), to make the subject calls to Plaintiff's cellular telephone number.

44. Defendant willfully and knowingly violated the TCPA implementing regulations, including 47 C.F.R. § 64.1200(a)(2), each time it made a call to Plaintiff's cellular telephone number, that included or introduced an advertisement or constituted telemarketing, using an artificial or prerecorded voice without Plaintiff's prior express written consent.

8

45. As a result of Defendant's illegal conduct, Plaintiff and the members of the Class and each Subclass suffered actual damages and, under 47 U.S.C. § 227(b)(3)(B), are entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

46. Plaintiff and the Class and Subclass members are also entitled to and do seek injunctive relief prohibiting Defendant from violating the TCPA in the future.

## CLASS ACTION ALLEGATIONS

47. Plaintiff realleges and incorporates by reference the allegations contained in all other paragraphs as if fully stated herein. Plaintiff, individually and on behalf of all others similarly situated, brings the above claims on behalf of a Class and Subclass.

48. In this case, Plaintiff seeks to certify the Class and Subclass, subject to amendment, as follows:

49. The Class consists of:

> (1) All persons in the United States (2) to whose cellular telephone number (3) Defendant placed a non-emergency telephone call (4) about Defendant's services regarding the sale of a vehicle (5) using an artificial or prerecorded voice (6) within 4 years of the complaint (7) where Defendant did not have express written consent to call said cellular telephone number.

The Scraper Subclass consists of:

> (1) All persons in the United States (2) to whose cellular telephone number (3) Defendant placed a non-emergency telephone call (4) about Defendant's services regarding the sale of a vehicle (5) using an artificial or prerecorded voice (6) within 4 years of the complaint (7) after that person placed an advertisement on an Internet website such as Craigslist.org or Cars.com in connection with the sale of a vehicle.

50. Plaintiff represents and is a member of the Class and each Subclass. Excluded from the Class and each Subclass are Defendant and any entities in which Defendant has a

controlling interest, Defendants' employees and agents, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

51. Plaintiff is presently unaware of the exact number of members in the Class and each Subclass, but based upon the size and scope of Defendant's business and the nature of the artificial or prerecorded voice messages, Plaintiff reasonably believes that the Class and Subclass members number, at a minimum, in the thousands.

52. Plaintiff and all members of the Class and each Subclass have been harmed by Defendant's actions.

53. This Class Action Complaint seeks money damages and injunctive relief.

54. The joinder of all Class and Subclass members is impractical due to the size and relatively modest value of each individual claim.

55. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits. The Class and each Subclass can be easily identified through records maintained by Defendant or its agents.

56. There are question of law and fact common to the members of the Class and each Subclass, which common questions predominate over any questions that affect only individual Class or Subclass members. Those common questions of law and fact include, but are not limited to:

> a) Whether the system used to place the calls delivered an artificial or prerecorded message;
>
> b) Whether Defendant engaged in a pattern of using an artificial or prerecorded voice to place calls to cellular telephone numbers without the prior express consent of the called party;

10

      c) Whether the calls included or introduced an advertisement;

      d) Whether the calls constitute telemarketing;

      e) Whether Defendant's conduct was willful or knowing; and

      f) Whether Defendant's actions violated the TCPA.

57. As a person who received calls that were made using an artificial or prerecorded voice without prior express consent, all within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of the Class and each Subclass.

58. Plaintiff will fairly and adequately represent and protect the interests of the Class and each Subclass, and Plaintiff does not have an interest that is antagonistic to any member of the Class or any Subclass.

59. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

60. A class action is the superior method for the fair and efficient adjudication of this controversy.

61. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for violation of the TCPA are small.

62. Management of these claims as a class action is likely to present significantly fewer difficulties than are presented by many class claims because the calls at issue are all automated and the Class and Subclass members, by definition, did not provide the prior express consent required under the statute and regulations to authorize such calls to their cellular telephones.

63. Defendant has acted on grounds generally applicable to the Class and each Subclass, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class and each Subclass as a whole appropriate.

64. Moreover, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of her and the Class, and against Defendant, for:

(a) A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

(b) An injunction prohibiting Defendant from using an artificial or prerecorded voice to make telemarketing or advertising calls to any cellular telephone number without signed, written agreements authorizing Defendant to make such calls to those numbers, in order to ensure that Plaintiff is not called in the future;

(c) An injunction requiring Defendant to file with the Court quarterly reports of third party audits of Defendant's system and procedures to not make telemarketing or advertising calls to any cellular telephone number using an artificial or prerecorded voice without signed, written agreements authorizing Defendant to make such calls to those numbers, in order to ensure that Plaintiff is not called in the future;

(d) An award of actual damages in an amount to be proven at trial;

(e) An award of statutory damages for Plaintiff and each Class and Subclass member in the amount of $500.00 for each and every call that violated the TCPA;

(f) An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class and Subclass member for each and every call that violated the TCPA;

12

Case 4:18-cv-00621-DGK   Document 1   Filed 08/13/18   Page 12 of 13

(g) An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class and each Subclass, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class and each Subclass;

(h) An award of Plaintiff's attorneys' fees, litigation expenses and costs of suit; and

(i) Such further and other relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby demands trial by jury on all issues so triable.

Dated: August 13, 2018

Respectfully Submitted,

LUCAS CRANOR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, Plaintiffs

By:  /s/ A.J. Stecklein
A.J. Stecklein         (#46663)
Michael H. Rapp      (#66688)
Stecklein & Rapp, Chartered
748 Ann Ave.
Kansas City, Kansas 66101
(913) 371-0727
(913) 371-0727 (fax)
aj@kcconsumerlawyer.com
mr@kcconsumerlawyer.com

Keith J. Keogh (*to be admitted pro hac vice*)
Keogh Law, Ltd.
55 W. Monroe St., Suite 3390
Chicago, IL 60603
(312) 726-1092
(312) 726-1093 (fax)
keith@keoghlaw.com

*Attorneys for Plaintiff and the Putative Class*